UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SHIRLEY JANSEN, )
)
       Plaintiff, )   Case No. 1:11-cv-509
)
v. )   Honorable Janet T. Neff
)
COMMISSIONER OF )
SOCIAL SECURITY, )
)   **REPORT AND RECOMMENDATION**
       Defendant. )
_____ )

      This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB). Plaintiff's first claim is for the period from November 10, 2000, through June 30, 2003. Her second claim is for a period of disability starting on June 23, 2005. Claim preclusion stemming from an earlier decision of this court bars any claim of disability for the period from July 1, 2003, through June 22, 2005.

      On April 1, 2003, plaintiff filed her application for benefits alleging a January 1, 1990 onset of disability. (A.R. 63-65). She later amended her claim to allege a November 10, 2000 onset of disability. Her claim was denied on initial review. (A.R. 35-40). On May 5, 2005, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 627-63). On June 22, 2005, the ALJ issued a decision that plaintiff was not disabled. (A.R. 18-32). On July 12, 2007, the Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.

Plaintiff sought judicial review of the Commissioner's decision. On August 7, 2008, United States Magistrate Judge Ellen S. Carmody entered a report and recommendation recommending that the Commissioner's decision be affirmed in part and reversed in part. (A.R. 687-709). On September 30, 2008, Senior United States District Judge Richard Alan Enslen adopted the report and recommendation and entered judgment. The judgment (1) affirmed the Commissioner's decision that plaintiff was not disabled from July 1, 2003, through June 22, 2005; (2) reversed the Commissioner's decision that plaintiff was not disabled from November 10, 2000, through June 30, 2003, and (3) remanded the reversed portion for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (A.R. 710-12). Although plaintiff had a well-documented history of substance abuse during the period from November 10, 2000, through June 30, 2003, the ALJ failed to make the specific factual findings required by 20 C.F.R. § 404.1535(b)(2). On remand, the ALJ was required to determine which of the claimant's physical and mental limitations would remain if she stopped her substance abuse, and then determine whether the remaining limitations would be disabling. (A.R. 712). Plaintiff did not seek appellate review of Judge Enslen's decision. Thus, it has been conclusively established that plaintiff was not disabled from July 1, 2003, through June 22, 2005.

Plaintiff filed a second application for DIB benefits claiming an onset of disability of June 23, 2005. Her disability insured status expired on December 31, 2005. Thus, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or before December 31, 2005. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's claims were consolidated for purposes of administrative convenience, but they remain separate claims for DIB benefits: (1) the remanded claim for the period from November 10, 2000, through June 30, 2003,

where the ALJ was required to determine whether plaintiff's substance abuse was material to a finding of disability in accordance with 20 C.F.R. § 404.1535(b)(2); and (2) a new claim for DIB benefits for a period starting June 23, 2005. (A.R. 675). On December 17, 2008, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 1171-1219). On May 7, 2009, the ALJ issued a decision that plaintiff was not disabled. (A.R. 675-86). On March 23, 2011, the Appeals Council denied review (A.R. 664-67), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ's factual finding regarding plaintiff's credibility does not permit meaningful appellate review; and

2. The ALJ violated the treating physician rule in the weight he gave to Dr. Thebert's opinions.

(Plf. Brief at 1, docket # 14). I recommend that the Commissioner's decision denying plaintiff's claims for DIB benefits be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from November 10, 2000, through December 31, 2005, but not thereafter. (A.R. 678). Plaintiff had not engaged in substantial gainful activity on or after November 10, 2000. (A.R. 678). Plaintiff had the following severe impairments: alcoholism, depression/bipolar, history of substance abuse, degenerative joint disease of the left knee and degenerative disc disease of the lumbar spine. (A.R. 678-79).

### I. November 10, 2000, through June 30, 2003

The ALJ found that for the period from November 10, 2000, to June 30, 2003, plaintiff had a listing-level mental impairment when her substance abuse was considered, but she did not have a listing-level impairment absent her substance abuse. (A.R. 679-81). If plaintiff had stopped using substances during this period, her remaining limitations would have caused more than a minimal impact on her ability to perform basic work activities. (A.R. 680). Absent substance use, plaintiff would have retained the RFC for a limited range of unskilled work at the medium exertional level involving tasks that could be learned in 30 days or less and involved no more than simple work-related decisions and only a few changes in the workplace. (A.R. 681). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 681-82). Plaintiff was not able to perform her past relevant work. (A.R. 684). She was 45-years-old as of her alleged onset of disability and 47-years-old on June 30, 2003. Thus plaintiff was classified as a younger individual at all times relevant to this claim. (A.R. 684). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 684). The transferability of work skills was not material to a finding of disability. (A.R. 684). Plaintiff was disabled when her substance use

was taken into account. She was capable of performing other work in the national economy if she stopped her substance use. (A.R. 684). "Because from November 10, 2000 through June 30, 2003 the claimant would not be disabled if she would have stopped the substance use (20 CFR 404.1520(g)), her substance use disorder was a contributing factor material to the determination of disability (20 CFR 404.1535). Thus, the claimant was not disabled within the meaning of the Social Security Act at any time from November 10, 2000 through June 30, 2003." (A.R. 685).

There is overwhelming evidence supporting the ALJ's factual finding on remand that plaintiff's substance use was material to a finding of disability. In November 2000, plaintiff was treated for alcohol dependence by John Campbell, M.D. Dr. Campbell noted that plaintiff "had been drinking alcohol daily for six months, 3/4 pint of vodka per day." (A.R. 220).

On December 11, 2000, plaintiff was involved in an alcohol-related car accident. She already had a drunk-driving conviction predating her alleged onset of disability. (A.R. 231, 238, 690). In January 2001, plaintiff received treatment at St. Mary's Health Services by V. E. Mathis-Allen. Plaintiff stated that she had been feeling depressed and sad "since [she] started drinking heavily again in the last 1½ months." (A.R. 229). She was drinking a pint of alcohol per day. Plaintiff had no history of psychiatric hospitalization or treatment. (A.R. 230). Dr. Mathis-Allen noted that plaintiff had been hospitalized for detoxification three times since November 2000. (A.R. 238). Dr. Mathis-Allen stated that plaintiff was "to have no alcohol, no caffeine, no cigarettes, and no street drugs." (A.R. 237).

In February 2001, plaintiff advised Stan Gunadi, M.D., that she was drinking a pint of vodka per day. (A.R. 249). Dr. Gunadi noted that plaintiff "still ha[d] some denial about the severity of her alcohol problem." (A.R. 249). Plaintiff was intoxicated when she appeared for a

therapy session on March 2, 2001. The therapist advised plaintiff's husband to take her to the emergency room because she had been drinking mouthwash. (A.R. 481).

On March 20, 2001, plaintiff was arrested and jailed for drunk driving. (A.R. 348) In March and April 2001, she received inpatient chemical dependency rehabilitation at Hazelden in Minnesota. Plaintiff revealed that if the criminal charges were not pending, she probably would not be seeking treatment. (A.R. 291). In addition to alcohol, plaintiff had been abusing Klonopin. (A.R. 270). "[B]enzodiazepines and alcohol [were] her drugs of choice." (A.R. 275).

On May 30, 2001, plaintiff acknowledged that she had been "drinking mouthwash." (A.R. 473). She became very hostile and angry when her therapist confronted her about this. (A.R. 473). In June 2001, she continued to consume alcohol against medical advice. (A.R. 472).

Lawrence Probes, M.D., treated plaintiff between June 8, 2001, and June 3, 2002. (A.R. 345-78). In June 2001, plaintiff appeared at Dr. Probes's office on self-referral. (A.R. 373). During her intake assessment, plaintiff "denied problems with alcohol or any other chemical dependency." (A.R. 374). On June 12, 2001, plaintiff was "very drunk" when she appeared for an appointment with her therapist. (A.R. 471). "On June 19, 2001, [Dr. Probes] received a communication from [plaintiff's] husband, Thomas Jansen, indicating that she does have a severe alcohol problem and a history of abusing prescription drugs. He specifically requested that she not be prescribed Klonopin." (A.R. 374). Dr. Probes advised plaintiff that he would not be prescribing "Klonopin or other benzodiazepine medications." (A.R. 375). On August 21, 2001, Dr. Probes stated: "Shirley presents with continuing signs of depression, Panic Attacks and a recent problem with alcohol associated with a conviction for driving under the influence of alcohol and a brief period of time in jail. She remains on probation under house arrest." (A.R. 365). Dr. Probes

reiterated that it was best to avoid Klonopin and similar medications and that he would be treating plaintiff with other medications. (A.R. 365). One day later, plaintiff called Dr. Probes's office requesting Klonopin and Xanax. A nurse in the office replied that Dr. Probes was not willing to prescribe those medications given plaintiff's history of alcohol and prescription drug abuse. (A.R. 359). On February 7, 2002, Dr. Probes noted that plaintiff was doing well. (A.R. 350). In June 2002, Dr. Probes noted plaintiff's continued desire for benzodiazepine medications. (A.R. 345-46). He referred plaintiff to Psychologist Thomas Moore, a clinician "experienced in addictionology." (A.R. 346).

On June 5, 2002, plaintiff appeared at the office of Philip Fox, M.D., on self-referral. (A.R. 383). Plaintiff stated that she had been "in jail one year for alcohol/DUI." (A.R. 384). For a short period, plaintiff was able to persuade Dr. Fox to prescribe Xanax. (A.R. 382-83). This ended abruptly in August 2002. Plaintiff called Dr. Fox's office requesting refills of Xanax long before her supply of this medication should have been exhausted. She gave a variety of excuses and was evasive when confronted. Dr. Fox was convinced that plaintiff was misusing Xanax. He informed plaintiff that his office "would not be able to prescribe any more benzodiazepines in the foreseeable future." (A.R. 380). On August 13, 2002, Dr. Fox noted that he had received a call from a pharmacy advising him that "Dr. Giovannucci and Dr. Rohn had called in Xanax prescriptions for [plaintiff]." (A.R. 379). Dr. Fox alerted Dr. Giovannucci that plaintiff was "getting into manipulative patterns for obtaining the Xanax." (A.R. 370). Dr. Fox was unable to provide a similar alert to Dr. Rohn because plaintiff would not authorize the communication. Dr. Fox terminated the treatment relationship, because plaintiff was unwilling to comply with treatment recommendations and provide a release allowing him to talk to Dr. Rohn. (A.R. 379).

On September 9, 2002, plaintiff had her initial consultation with Michael Thebert, M.D. (A.R. 453-55). Plaintiff related that she had recently had an accident while drinking and driving and that she faced the loss of her license. (A.R. 453). She reported that she last drank alcohol in June 2001. She gave a psychiatric history indicating that she saw a counselor on a weekly basis. There is no evidence suggesting that plaintiff disclosed to Dr. Thebert that she had been treated by a number of physicians, but stopped seeing them when they discovered her prescription medication abuse. (A.R. 454). Plaintiff had no major physical complaints. (A.R. 454). Dr. Thebert prescribed Xanax and Effexor in response to plaintiff's complaints of panic attacks and depression. (A.R. 452). On October 10, 2002, Dr. Thebert added a prescription for Klonopin. (A.R. 451). On January 30, 2003, Dr. Thebert noted as follows:

> Shirley has had a setback. She is seen with her husband today and he is concerned with her condition. It is appearing that she is drinking because she always has slurred speech. She denies this. She says she has been taking medications for headaches and shows an empty bottle filled one week ago for Fiorinol 30 tabs. She says she took them all [illegible]. Her husband accuses her [o]f taking the kids['] Adderall and she denies this but gives me a note (attached) that says that she did.
>
> We discussed the drug problem out of control. We are going to try to get her into a more acute rehab program now. Her husband will monitor all medications.
>
> Without the drug issue in control her treatment here is limited.

(A.R. 447).

On February 5, 2003, plaintiff advised Dr. Thebert of her "opioid withdrawal" symptoms. (A.R. 446). She received inpatient treatment at Forest View Hospital from February 7, 2003, through February 25, 2003. Her condition improved with treatment.[1] (A.R. 406-43). On

---

[1] On July 26, 2008, Dr. Masterson at Forest View Hospital stated: "Shirley was previously treated at Forest View Hospital in February 2003. She reports that she has done reasonably well since that admission to the hospital but began having increasing depression and anxiety in 2008. She

April 24, 2003, plaintiff reported to Dr. Dr. Thebert that she was feeling "much more calm and relaxed." (A.R. 499). Plaintiff exhibited mild signs of depression, but no signs of anxiety. (A.R. 499).

The ALJ's finding that plaintiff was not disabled from November 10, 2000, through June 30, 2003, because her substance abuse was material to a finding of disability is supported by much more than substantial evidence. The record during this time is replete with evidence of substance abuse, which one treating physician described as "out of control." (A.R. 447). This evidence is overwhelming and it disqualifies plaintiff from collecting DIB benefits for this period.

## II.  June 23, 2005, through December 31, 2005

On plaintiff's claim for DIB benefits for the period starting June 23, 2005, the ALJ found that plaintiff met the disability insured requirements through December 31, 2005, but not thereafter. She had not engaged in substantial gainful activity. Plaintiff had the severe impairments of alcoholism, depression/bipolar, history of substance abuse, degenerative joint disease of the left knee and degenerative disc disease of the lumbar spine. She did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 678-682). Through her date last disability insured, plaintiff retained the RFC for a limited range of medium work. (A.R. 682). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 683-84). Plaintiff was unable to perform her past relevant work. (A.R. 684). Plaintiff was 49-years-old on June 23, 2005. She was classified as a younger individual through September 28, 2005, and an individual closely approaching advanced

---

ultimately began to use alcohol again in March of 2008 and was hospitalized at Pine Rest for her alcohol at that time." (A.R. 1047).

age from September 29, 2005, through December 31, 2005.² (A.R. 53). Plaintiff's education, ability to communicate in English, and the transferability of job skills were as previously indicated. (A.R. 684). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 25,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 1215-16). The ALJ found that this constituted a significant number of jobs. Using Rule 203.29 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled from June 23, 2005, through December 31 2005. (A.R. 685).

**III.    Credibility**

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ's factual finding regarding her credibility on both claims for DIB benefits does not permit meaningful appellate review. (Plf. Brief at 15-18; Reply Brief at 1-3). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See*

---

²The ALJ should have noted that plaintiff's age classification changed when she reached age 50. *See* 20 C.F.R. § 404.1563(d). The error was harmless because the hypothetical question the ALJ posed to the VE was for a person of plaintiff's age in 2008. (A.R. 1178, 1215). The ALJ's failure to restrict his hypothetical to a person of plaintiff's age as of her date last disability insured was an error in her favor. Further, the ALJ's opinion should have included a citation to Rule 203.22. This omission was harmless because Rule 203.22, when used as a framework, would support the ALJ's decision that plaintiff was not disabled.

-11-

*Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

Defendant argues that plaintiff forfeited the right to challenge the ALJ's credibility determination because she did not raise that issue in her earlier appeal. (Def. Brief at 15). This argument is meritless. The only authority cited is a footnote in *Kontrick v. Ryan*, 540 U.S. 443

(2004), in which the Supreme Court noted the difference between forfeiture and waiver: "Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id.* at 458 n.13 (quoting *United States v Olano*, 507 U.S. 725, 733 (1993)). The issue before the Court in *Kontrick* was whether a debtor forfeits the right to rely on Bankruptcy Rule 4004's time limit for a creditor to file objections to discharge if the debtor does not raise the issue before the bankruptcy court reaches the merits of the creditor's objection. 540 U.S. at 447. It is pellucid that *Kontrick* did not establish that a claimant for DIB benefits who successfully obtains a judgment remanding the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g) is thereafter, in a subsequent lawsuit seeking judicial review of the post-remand decision, restricted to the issues she raised in the first lawsuit. The court's judgment remanding this matter to the Commissioner under sentence four was a final judgment. The court did not retain jurisdiction. *See Shalala v. Schaefer*, 509 U.S. 292, 299 (1993). Plaintiff remains free to challenge any aspect of the Commissioner's May 7, 2009 decision, including the ALJ's credibility determination. However, this does not suggest that the ALJ's earlier findings regarding plaintiff's credibility simply disappeared.

On June 22, 2005, the ALJ found that plaintiff's statements regarding her functional limitations were not fully credible:

> The undersigned finds that the claimant is not fully credible in describing her limitations based on the facts that:
>
> 1. She leads a full life. She quit her last employment to adopt and raise her two sons; she engages in a full range of activities of daily living; and she and her family take two vacations a year;

2. The medical evidence of record does not support her allegations and her treating psychiatrist characterizes her depression in September 2004 as "mild" (Exhibit 29); and

3. She has chosen not to follow up on her psychiatrist's recommendation that she engage in therapy in addition to the medication he prescribes.

(A.R. 28). It was against this backdrop that the ALJ addressed plaintiff's testimony at the 2008 hearing regarding her functional limitations. When the ALJ asked plaintiff what was preventing her from working an eight-hour day, five days a week, plaintiff testified that she gets "stressed out really easily." (A.R. 1198). Here, as in his earlier decision, the ALJ found that plaintiff's testimony was not fully credible. (A.R. 683).

Plaintiff argues that the ALJ failed to articulate adequately why he found that her testimony was not fully credible. While the ALJ could have stated his findings with greater precision, what he did find was sufficiently specific to pass appellate review. Perfection is not required. In the 2009 opinion, like its predecessor, the ALJ determined that plaintiff's testimony was not fully credible because it was inconsistent with her daily activity level. Plaintiff was able to perform her activities of daily living, live independently, walk up to two miles, and she continued to ski. (A.R. 682). Plaintiff's extensive activities indicated very few limitations:

> The claimant testified she has not worked outside the home for the past four or five years. She described activities of daily living of a fulsome family life. She has two teenager sons, both in high school. They are involved in multiple extracurricular activities. She has been taking care of her kids and starting her day at 6 am on school days. The claimant runs errands, keeps home, prepares meals, irons and does laundry. She has a full set of hobbies such as scrap booking. She reads a book every three weeks. On a more social level she interacts with her fellow AA attendees, sees her sponsor on a regular basis, belongs to a book club and goes to parent-teacher meetings at school. She walks with friends, talks with her sister and her parents on a regular basis. She also enjoys skiing and boating.
>
> She explained that she cannot work because she easily gets stressed out because she is mentally ill and a perfectionist that gets upset if things are not done just right. She feels this

would interfere with her ability to work. She also mentioned that her children are needy. She gets calls from school about once per week and often needs to pick her son up from school. She is not sure if she could work but for the children.

(A.R. 683). Plaintiff's extensive activities undercut her claims of disabling functional limitations. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). The ALJ's credibility determination is adequately supported. I find no basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Thebert's opinions under the treating physician rule. (Plf. Brief at 18-23; Reply Brief at 3-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*,

SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

On earlier review, this court rejected plaintiff's claim that the ALJ had violated the treating physician rule in the weight given to Dr. Thebert's opinion. (A.R. 707-08, 710-12). Plaintiff now seeks to secure a different result based on a statement her attorney elicited from Dr. Thebert on August 11, 2005. (A.R. 1167-70). The ALJ considered this statement and gave very good reasons why the opinions stated therein were entitled to little weight:

> I have carefully considered but not accepted the statement of treating psychiatrist Dr. Thebert dated August 11, 2005 regarding how the claimant's depression is more severe than reflected in his own treatment notes (Exhibit 52F). Dr. Thebert clarified that the "mild" description in his notes may have been the result of him pushing the wrong computer key. His explanation is nonsensical. Furthermore, he notes that he has three choices: mild, moderate, and severe. I note that Dr. Thebert never claimed that her condition was severe. Clinical notes by Dr. Thebert demonstrate evidence of depression – mostly mild, sometimes "normal" and occasionally "moderate" – most often in response to the claimant's children. The only time Dr. Thebert indicated that the claimant could not work was the day of his statement to the claimant's representative. Additionally, the scope of this decision involves two time periods: November 10, 2000 through June 30, 2003 and June 23, 2005 through December 31, 2005. Dr. Thebert referred mainly to 2004, which is not within the time frame considered in this evaluation of disability.

(A.R. 682). Dr. Thebert's progress notes generally indicated that plaintiff had mild signs of depression. The ALJ was not required to accept Dr. Thebert's belated attempt to downplay the significance of his own observations regarding plaintiff's functional limitations. I find no violation of the treating physician rule.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: March 1, 2013  /s/ Joseph G. Scoville
United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).